314 Ga. 510
FINAL COPY

S22Y0665, S22Y0666, S22Y0667, S22Y0668, IN THE MATTER OF GRADY ALEXANDER ROBERTS III (four cases).

PER CURIAM.

These four matters are before this Court on four separate reports and recommendations of the State Disciplinary Review Board, each of which reviewed separate reports and recommendations made by Special Master Catherine H. Hicks.[1] The Review Board reports recommend that respondent Grady Alexander Roberts III (State Bar No. 609540), who has been a member of the Bar since 1994, be disbarred for a number of violations of the Georgia Rules of Professional Conduct in four separate client

---

[1] The Rules and Regulations of the State Bar of Georgia governing disciplinary proceedings were amended on January 12, 2018, based on an Order of the Supreme Court of Georgia. The Order provides in part that "the former rules shall continue to apply to disciplinary proceedings commenced before July 1, 2018[.]" Because these cases were commenced prior to July 1, 2018, they are proceeding under the former Rules. See *In the Matter of Podvin*, 304 Ga. 378, 378 n.1 (818 SE2d 651) (2018).

matters. For the reasons discussed below, we accept the recommendation of the Review Board and disbar Roberts.

At the outset, a note about the scope of this opinion. The Bar alleged a number of violations against Roberts in these four disciplinary matters: State Disciplinary Board Docket ("SDBD") Nos. 6875, 6876, 6963, and 7027.[2] But the Special Master and the Review Board reached different conclusions about whether certain Rules had been violated. And for certain other alleged violations, even where the Special Master and the Review Board agreed, the issues appear to us to be debatable. That said, from our review of the record, it cannot be reasonably disputed that Roberts committed numerous violations of multiple Rules, including several for which disbarment is an available sanction, and that disbarment is the appropriate sanction in the light of these violations. So we address here only those violations the record clearly supports. See *In the*

---

[2] In addition to these four matters, the special master was considering seven other matters against Roberts, two of which appear to have since been dismissed. A Special Master has also been appointed in five additional disciplinary matters against Roberts. We do not consider those additional matters here.

2

*Matter of Morris*, 302 Ga. 862, 864, n.3 (809 SE2d 799) (2018) (declining to reach question of whether attorney violated Rule 8.4 (a) (3) because attorney clearly violated a number of other Rules for which disbarment was an appropriate sanction). Specifically, we address only the violations established in SDBD Nos. 6963 and 7027, and we do not address the allegations in SDBD Nos. 6875 and 6876.

## Procedural Issues

As a threshold matter, Roberts has raised a number of procedural objections to these disciplinary proceedings. None has merit.

First, Roberts contends that he did not receive fair notice of the charges against him. The formal complaints listed numerous factual assertions followed by a recitation of the Rules that he was charged with violating, and he contends that it was "simply impossible" to discern which conduct supposedly established a violation of which Rule. Roberts is correct that he is entitled to fair notice of the charges against him in a proceeding that could result in his

3

disbarment. See *In re Ruffalo*, 390 U.S. 544, 550 (88 SCt 1222, 20 LE2d 117) (1968). But here, "no new charges were added following the filing of the formal complaint and [Roberts] was given ample notice and a full opportunity to present a defense to those charges." *In the Matter of Henley*, 271 Ga. 21, 22 (3) (518 SE2d 418) (1999). And Roberts's assertion that it was "simply impossible" to discern which conduct established a violation of which Rule is not supported by a review of the formal complaints.

Next, in several related objections, Roberts contends that the Bar failed to satisfy its burden of proof by failing to introduce sufficient evidence of the alleged Rules violations; that it was improper for the Bar, the special master, and the Review Board to rely on rulings made in the underlying cases by the trial and appellate courts; and that the Review Board failed to review the record, instead making a blanket adoption of the special master's findings of fact and conclusions of law. Each of these contentions fails. The record contains abundant documentation about the underlying civil proceedings, testimony on these matters was taken

4

at a number of hearings, and numerous facts to which Roberts expressly stipulated in separately filed documents were admitted during these proceedings. A review of the special master's orders on summary judgment, as well as her reports and recommendations, shows that she relied extensively on this evidence in rendering her decisions, rather than simply relying on the contents of the various court rulings. Similarly, the four reports and recommendations filed by the Review Board show no sign that the Board failed to independently review the records before it or that it simply made a blanket adoption of the rulings made by the special master.

Finally, Roberts contends that he is entitled to constitutional due process protections, including those recognized in *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963). He argues that his "motion for discovery, inspection, production and copying of evidence favorable to the respondent," which he filed in the underlying disciplinary proceedings, should have been granted. But Roberts offers no authority showing that *Brady* applies to disciplinary proceedings, we are aware of no case in which we have

5

applied *Brady* in any lawyer disciplinary matter before us, and Rule 4-212 (c) (which provides that "[b]oth parties to the disciplinary proceeding may engage in discovery under the rules of practice and procedure then applicable to civil cases in the State of Georgia") indicates that discovery in disciplinary proceedings is governed by the rules of civil procedure.[3] See also former Rule 4-221 (e) (2) (generally, "the procedures and rules of evidence applicable in civil cases" apply in disciplinary proceedings). In the alternative, Roberts maintains that, independent of due process considerations, the Office of General Counsel is bound by Rule 3.8, which sets out "special responsibilities of a prosecutor," because the Office functions in disciplinary proceedings as a prosecutor.[4] However, that

---

[3] Moreover, in its response to Roberts's underlying discovery motion, the Bar asserted that, despite the fact that these matters had by then been pending for some time, Roberts had not conducted the discovery to which he was entitled, and he was using his motion as a means to sidestep his failure to engage in the appropriate process. That fact further counsels against concluding that these proceedings were defective because Roberts's discovery motion was denied.

[4] Among other things, this Rule imposes a duty to "make timely disclosure to the defense of all evidence or information known to the prosecutor

6

Rule applies only to prosecutors in criminal cases, and Roberts cites no authority that supports extending it to cover the Bar's Office of General Counsel in a disciplinary proceeding. [5]

## SDBD No. 6963

The facts underlying this matter—as found by the special master and supported by the record—are as follows.[6] Roberts filed a complaint for wrongful foreclosure on behalf of a client. The defendants were not satisfied with Roberts's responses to discovery and so moved for sanctions or to compel discovery. Roberts did not respond and instead dismissed the action. Roberts did not inform the client of either the motion for sanctions or the dismissal of the suit. The defendants then sought attorney fees related to their motion to compel discovery, but Roberts again did not respond or

---

that tends to negate the guilt of the accused or that mitigates the offense." Rule 3.8 (d).

[5] Although Roberts challenges the use of a summary judgment procedure in SDBD Nos. 6875 and 6876, we need not address this contention given our conclusion that disbarment is proper without regard to the dispositions in those cases.

[6] See *In the Matter of Cook*, 311 Ga. 206, 207 (1) (857 SE2d 212) (2021) (Court defers to fact-findings of the special master where they are supported by the record).

inform his client. The client learned about the motion through other means.

Neither Roberts nor the client appeared for a hearing on the request for attorney fees, and the trial court entered a substantial award of fees against Roberts and his client, jointly and severally, about which Roberts failed to inform his client. Roberts sought to appeal the order on sanctions and moved to set aside the order in the trial court, but the appeal was dismissed, and the trial court denied the motion to set aside. Roberts did not inform his client that the appeal had been dismissed. Roberts then continued a similar pattern of actions and inactions, resulting in, among other things, the imposition of more fees and the dismissal of another appeal. Roberts yet again failed to inform his client about those.

Among other rules, the Bar alleged that Roberts's conduct violated Rules 1.1 (lawyer shall provide competent representation to a client) and 1.2 (a) (lawyer shall abide by a client's decisions concerning the scope and objectives of representation and shall consult with the client as to the means by which they are to be

pursued). The maximum sanction for a single violation of either Rule is disbarment.

The Bar alleged that Roberts violated Rule 1.1 by failing to respond to the motions for sanctions and attorney fees, attend hearings, or follow the proper procedures for filing appeals. Roberts contends that he was not obligated to respond to the motions for sanctions and fees, but he does not explain how his inaction was competent representation. Failing to respond to a motion for sanctions can violate Rule 1.1. See *In the Matter of Hooks*, 292 Ga. 781 (741 SE2d 645) (2013) (attorney who did not respond to the opposing party's discovery, motion to compel, or motion for sanctions did not provide competent representation to the client). And although Roberts insists that his appeal of the fees award was improperly dismissed, he cites no authority to support that conclusion, and he did not seek review of the dismissal order by either motion for reconsideration in the Court of Appeals or a petition for writ of certiorari in this Court.

The Bar alleged that Roberts violated Rule 1.2 (a) by failing to communicate with the client about matters including the motions for sanctions and attorney fees and the judgments entered against him, and by failing to obtain the client's informed consent as to Roberts's actions and inactions in response to the motions and judgments, which deprived the client of the ability to make informed decisions about his cases. Roberts contends that he obtained the client's informed consent at the beginning of the representation and communicated and consulted with him throughout, but the client's testimony in the underlying disciplinary proceedings contradicts this assertion and establishes that Roberts failed to inform the client about numerous matters including his dismissal of the underlying suit, the entry of fee awards against him, and the status of case-related matters.

According to the special master, and as shown in the record,[7] in 2014 Roberts was retained by a client, who was 68 years old and living on Social Security, to get a mortgage modification. The client was never presented with a modification document to review and was not updated on the status of her application. When the client asked about the status of her loan modification, Roberts's staff informed her that they were waiting to hear from the mortgage company. She eventually learned from Roberts's staff that her loan modification had been denied. Roberts informed the client that he believed she had a good case and that he could help her keep her house, and she understood that he had discovered a problem with the mortgage paperwork that would absolve her of her mortgage obligations altogether, although he did not explain the problem or process to her. Later, the client received a notice of acceleration from the mortgage lender threatening foreclosure of her home. When she

[7] See *Cook*, 311 Ga. at 207 (1).

11

called Roberts about the notice, he assured her that there could be no foreclosure while the house was the subject of litigation. Despite that assurance, the client's home was sold in an April 2015 non-judicial foreclosure sale. Then, without the client's knowledge or consent, Roberts filed a wrongful foreclosure action on the client's behalf, but the superior court granted motions to dismiss filed by the defendants on several bases. Roberts never informed the client about filing the action or the dismissal, brushing off her inquiries about the status of her situation. She continued to make fee payments to Roberts.

Some time later, the buyer of the client's home filed a dispossessory action against the client in magistrate court, to which Roberts filed an answer and counterclaim, but after a hearing, the court granted a writ of possession to the buyer and dismissed the client's counterclaim. The court also entered a monetary award against the client and ordered that, if she elected to appeal, she would be required to pay significant costs into the court's registry. Roberts failed to inform the client about the monetary award or the

appeal-related costs, and, despite these costs, Roberts filed an appeal to the superior court. The client received a notice of eviction, and Roberts advised the client to file bankruptcy to forestall the eviction. Although the client agreed to do so and paid the filing fee to one of Roberts's employees, she later learned that the bankruptcy case was dismissed because of a failure to pay the filing fee. After the appeal of the writ of possession was docketed in the superior court, the magistrate court entered another order allowing for execution of the writ of possession. Roberts filed an application for discretionary appeal in the Court of Appeals, but the application was dismissed.

Roberts then failed to appear in superior court at the hearing on his client's appeal from the magistrate court's order. The superior court entered an order dismissing the appeal, deeming the client to have abandoned it. Roberts filed an application for discretionary appeal in this Court, which transferred the application to the Court of Appeals. Roberts filed a non-notarized affidavit of indigency on his client's behalf, but he had not discussed the affidavit with the

13

client, and she did not authorize its filing. Once the application was transferred to the Court of Appeals, it was granted, but the later appeal was dismissed because Roberts failed to file a timely notice of appeal.[8] The superior court later granted the buyer an immediate right of possession and denied all of the client's counterclaims, after which Roberts again requested fees from the client. Roberts appealed the superior court's order, but the application for discretionary appeal was denied. Roberts took no further action on the client's behalf.

Among other rules, the Bar alleged that Roberts's conduct violated Rules 1.1, 1.2 (a), 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client), and 1.4 (lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished, shall keep the client

---

[8] The Court of Appeals' order included a statement noting Roberts's repeated prior untimely filings in that court and directing its clerk to transmit a copy of the dismissal order to the Bar's Office of General Counsel. The Court of Appeals later issued an order revoking Roberts's permission to practice in that court, at which point Roberts owed it more than $23,000 in unpaid filing fees.

reasonably informed about the status of the matter, and shall explain a matter to the client to the extent reasonably necessary to permit the client to make informed decisions regarding the representation). The maximum available sanction for a single violation of Rule 1.3 is disbarment, while the maximum available sanction for a single violation of Rule 1.4 is a public reprimand.

The Bar alleged that Roberts violated Rule 1.1 by failing to follow deadlines for filing appeals, by intentionally failing to attend hearings, and by causing his client's bankruptcy case to be dismissed by failing to pay the filing fee. In his exceptions, Roberts simply states that he had the professional discretion to determine the manner in which matters should be pursued and asserts that the Bar failed to show that his actions were unsupported by the law. But the record shows that the manner in which Roberts chose to pursue these matters was not reasonable or competent, and he failed to explain how his actions constituted a reasonable exercise of professional discretion or were supported by Georgia law. Roberts further asserts that he did not timely receive notice of the Court of

15

Appeals' order granting the discretionary application and suggests that the Court of Appeals could have set aside and re-entered its order so that a notice of appeal could have been timely filed. But the notice of appeal filed by Roberts does not mention any purported defect in service (nor does the order granting the application, for that matter) and there is no indication that Roberts complained of a defect in service or sought to have the order granting the application set aside and re-entered or to otherwise remedy the dismissal.

As for Rule 1.2 (a), the record demonstrates that Roberts failed to consult with his client about the action for wrongful foreclosure that he filed on her behalf. And Roberts's communications with the client about the appeals that he filed on her behalf did not include consulting with the client about the means by which her objectives were to be pursued, as Rule 1.2 (a) requires.

With respect to Rule 1.3, the record shows that Roberts failed to diligently pursue matters for the client, abandoned certain court filings, failed to ensure filing fees were paid, and disregarded deadlines.

16

Finally, as to Rule 1.4, Roberts failed to inform, consult with, and explain to the client matters regarding her litigation. Before this Court, Roberts contends that he was unable to reach the client once she was contacted by the Bar about Roberts's handling of her case, but the client testified that her communication with the Bar happened after the entirety of Roberts's representation had occurred. So his argument about being unable to reach the client, even if true, does not address his failures to communicate with her throughout the representation.

### Sanction Analysis

In considering the appropriate sanction for these matters, the Review Board applied the ABA Standards for Imposing Lawyer Sanctions, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996) (applying ABA Standards). Our review of the record supports the Board's conclusions in this regard, which we recount here.

To determine the appropriate sanction after a finding of lawyer misconduct, the ABA Standards explain that courts should consider

17

the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existing aggravating or mitigating factors. See ABA Standard 3.0. The Review Board determined that Roberts violated his duty to the legal system under ABA Standard 6.0 and violated his duties to his client under Standard 4.0. As for Roberts's mental state, the Review Board concluded that Roberts knowingly and intentionally engaged in the Rules-violating conduct in SDBD Nos. 6963 and 7027. The Review Board also concluded that Roberts caused actual harm to his clients in SDBD Nos. 6963 and 7027, including the award of fees against the client in SDBD No. 6963.

Moving to the factors in aggravation and mitigation, the Review Board considered the following to be aggravating: that Roberts has substantial experience in the practice of law; that he had a dishonest or selfish motive; that his misconduct was part of a pattern; that his misconduct involved multiple offenses; that he has refused to acknowledge the wrongful nature of his conduct; that his client in SDBD No. 7027 was a vulnerable victim; and that Roberts

18

has demonstrated an indifference to making restitution. See ABA Standard 9.22 (b), (c), (d), (g), (h), (i) and (j). As for mitigating factors, the Review Board agreed that Roberts had not been subject to discipline before, see ABA Standard 9.32 (a), but it disagreed with his assertions that he lacked a dishonest or selfish motive; that he had made a full and free disclosure to the disciplinary authorities and had demonstrated a cooperative attitude toward the proceedings; that his character witness testimony was mitigating; and that he had been prejudiced by a delay in the disciplinary proceedings.

## Conclusion

Having considered the record, we agree that disbarment is the appropriate sanction in this matter. As shown above, Roberts clearly committed violations that support disbarment: violations of Rules 1.1 and 1.2 (a) in SDBD No. 6963, and violations of Rules 1.1, 1.2 (a), and 1.3 in SDBD No. 7027.[9] Together, these violations support

---

[9] Roberts also clearly committed lesser violations of Rule 1.4 in SDBD No. 7027.

disbarment, particularly given the actual harm to clients caused by Roberts's conduct in SDBD Nos. 6963 and 7027, multiple aggravating factors, and only one factor—a lack of prior discipline— in mitigation. See *In the Matter of Lain*, 311 Ga. 427 (857 SE2d 668) (2021) (disbarring attorney for conduct including failing to appear for scheduled court appearances without notifying the court in advance, resulting in the court finding her in contempt and assessing attorney fees against her and her client); *In the Matter of Hayes*, 285 Ga. 400 (677 SE2d 132) (2009) (disbarring attorney who failed to inform clients about status of case, that defendant made motion for attorney fees and sanctions, or that attorney fees had been assessed against them); *In the Matter of Lenoir*, 282 Ga. 311 (647 SE2d 572) (2007) (disbarring attorney for failing to file pleadings on clients' behalf or to adequately communicate with clients).

Thus, it is hereby ordered that the name of Grady Alexander Roberts III be removed from the rolls of persons authorized to

practice law in the State of Georgia. Roberts is reminded of his duties under former Bar Rule 4-219 (c).

*Disbarred. All the Justices concur, except Peterson, P. J., not participating.*

Decided August 9, 2022 — Reconsiderations denied September 7, 2022.

Disbarment.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, Andreea N. Morrison, Wolanda R. Shelton, James S. Lewis, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Wilson Morton & Downs, James E. Spence, Jr.*, for Roberts.